IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 19-cr-506-1 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| DAVID GRIFFIN. | ) | |

**MEMORANDUM OPINION AND ORDER**

On June 19, 2019, Defendant David Griffin was indicted on one charge of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). [1.] Currently before the Court is Defendant's motion to suppress evidence seized by law enforcement on May 25, 2019. [37.] In addition to reviewing the parties' briefs [37, 41, 94, 96], the Court held an evidentiary hearing [92]. For the reasons stated below, the Court denies Defendant's motion. [37.]

**I.      Background[1]**

Less than a month after Defendant's arrest on May 25, 2019, a grand jury returned an indictment charging Defendant with unlawful possession of a firearm by a felon. [1.] Defendant moved to suppress all evidence found on his person, specifically a .45 caliber, semi-automatic Glock 21 with an attached extended magazine. [37.] On November 14, 2022, the Court held an evidentiary hearing. [92.] The officers who participated in Defendant's arrest testified, including Officer Moylan, Sergeant Vasquez,[2] Officer Sweis, and Officer Dalrymple. [Hearing Tr. ("Tr.") 1–69.] Additionally, the body-worn camera footage of the officers was shown, and the official incident, arrest, and traffic reports were admitted into evidence. [Exh. 1–9.]

---

[1] The facts below are undisputed unless otherwise noted.

[2] On May 25, 2019, the date of the arrest, Sergeant Vasquez was an officer with the Chicago Police Department. [Tr. 34.] As such, the Court will refer to him as Officer Vasquez.

On May 25, 2019, Officers Moylan, Vasquez, and Sweis were patrolling the Sixth District in a marked police vehicle. [Tr. 14–15, 35, 52.] Moylan was driving the vehicle; Sweis sat in the front passenger seat; Vasquez was in the rear passenger seat. [Tr. 15, 35, 52.] As the three officers patrolled, they observed a car with an unilluminated rear license plate pull to the side of the road to park without signaling.[3] [Tr. 17, 36, 52–53, 55.] Officer Moylan turned on the police vehicle's emergency lights and made a traffic stop. [Tr. 17; Exh. 2, 00:00–00:28.] Dalon Naylor was driving the car and Defendant David Griffin was in the passenger seat. [Tr. 16–17.]

Officer Moylan approached the driver's side of the vehicle where Naylor was seated. [Tr. 17; Exh. 2, 00:28–00:35.] Officer Moylan asked Naylor to roll down the back window of the vehicle. [Tr. 19; Exh. 2, 00:35–00:55.] After Naylor had done so, Officer Moylan introduced himself and explained that he pulled Naylor over because he had pulled to the side of the road abruptly without using his turn signal and he was blocking a driveway.[4] [Tr. 19; Exh. 2, 01:02–01:10.] Officer Moylan testified that at this time he smelled the strong odor of fresh cannabis emitting from the vehicle but did not tell Naylor or Griffin because both "had already shown apprehension to complying with police orders and stepping out of the vehicle."[5] [Tr. 21.] Officer Moylan repeatedly asked Naylor to get out of the car, which Naylor refused to do. [Tr. 21, 31; Exh. 2, 01:25–02:00.] When Naylor asked why Officer Moylan pulled him over, Officer Moylan stated that it was because Naylor was blocking a driveway. [Exh. 2, 02:00–02:04.] Officer Moylan

---

[3] The arrest report for Griffin does not mention that the rear license place was not illuminated [Exh. 1, at 2.], but the traffic tickets issued to Naylor, the driver of the car, and the incident report do [Exh. 4, at 1–2; Exh. 5, at 4]. A still image of the license plate shows that it was not illuminated. [Exh. 9.]

[4] Officer Moylan additionally testified that he told Naylor that his rear license plate light was not illuminated as a reason that he pulled Naylor over. [Tr. 19.] On cross-examination, after being shown his body-worn camera footage, Officer Moylan agreed that he failed to state as much on May 25, 2019. [Tr. 23]

[5] Officer Sweis also testified that he smelled a strong odor of marijuana emanating from the vehicle, contrary to his direct examination testimony. [Tr. 58]

instructed Naylor to keep his hands on the steering wheel, walked back to the marked police vehicle, and moved the marked police car to the front of Naylor's vehicle. [Exh. 2, 02:07–03:14.] In that time, Officer Sweis and others repeatedly instructed Naylor to exit his vehicle and Naylor stated multiple times that he was pulled over for a turning signal while refusing to obey the officers' instructions. [Exh. 6, 03:00–05:00.] Eventually, officers removed Naylor from the front driver's seat and handcuffed him. [Exh. 6, 05:00–05:12.]

Meanwhile, Officers Vasquez and Sweis approached the passenger side of the vehicle, where Griffin sat. [Tr. 37; Exh. 3, 00:00–00:05; Exh. 6, 00:30–00:50.] While Officer Vasquez stood by the passenger side window, Officer Sweis circled around the back of the car to shine a flashlight into the back seat of the car, finding nothing. [Exh. 6, 00:50–01:30.] After Griffin provided his identification and attempted to roll up his window, which was heavily tinted, Officer Vasquez requested that Griffin roll his window back down, so that Officer Vasquez could see his hands, and asked another officer to request an additional car as backup, specifying that it was not an "emergency." [Tr. 39, 54; Exh. 3, 00:15–01:04.] Officer Vasquez testified that while he requested backup, he perceived a bulge in Griffin's waistband and noticed him adjusting it several times. [Tr. 45–48; Exh. 3, 00:30–00:58.] After Griffin and Naylor refused to exit the vehicle, Officer Vasquez informed Officer Moylan that the two were refusing to do so. [Exh. 3, 01:51–02:03.]

Upon returning to the passenger side window, Officer Vasquez again asked Griffin to exit the car, which he refused to do. [Exh. 3, 02:10–02:16.] Officer Vasquez stated that Griffin was failing to comply "with the rule of direction" and placed him under arrest, intending to conduct a "protective pat down." [Tr. 39–40; Exh. 3, 02:16–02:25.] Officer Vasquez then opened the passenger side door, repeatedly stating, "Keep your hands where I can see them, don't reach for

3

nothing, I don't want to fight you." [Tr. 39; Exh. 3, 04:10–04:30.] On observing Griffin move his hand, Officer Vasquez, with assistance from Officers Moylan, Sweis, and others, physically removed Griffin from his seat, handcuffed him, and held him up against the side of the car. [Tr. 39–40; Exh. 2, 05:08–05:59; Exh. 3, 04:30–04:50; Exh. 6, 05:15–05:29.] Noticing that Griffin "had something" in his front waistband, he shifted Griffin's position and felt a hard object in his waistband on patting him down, eventually recovering a firearm. [Tr. 40; Exh. 3, 04:50–05:25.] Officer Dalrymple, an additional officer who was called for as backup, can be heard shouting "it's a gun" in her body-worn camera footage at this time. [Exh. 7, 01:55–02:02.]

## II.     Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. If a search or seizure violates the Fourth Amendment, a court will generally exclude any evidence recovered from it. See *United States v. Simon*, 937 F.3d 820, 828 (7th Cir. 2019). As traffic stops are seizures, they must be reasonable under the totality of the circumstances. See *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (internal quotation marks omitted). For a traffic stop to be reasonable, it "must be justified at its inception, and reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (internal quotation marks omitted). "Because traffic stops are typically brief detentions * * * they require only reasonable suspicion of a traffic violation—not probable cause." *Id.* "Reasonable suspicion exists when, considering the totality of the circumstances, an officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 433 (internal quotation marks omitted) (quoting *Navarette v. California*, 572 U.S. 393, 396–97 (2014)). The Court's inquiry is whether officers "reasonably believed that he saw a traffic violation, not whether [defendant]

actually violated the statute." *Id.* at 428; see also *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) ("The officer is not the judge. Whether the driver actually committed a traffic infraction is irrelevant for Fourth Amendment purposes so long as there was an objective basis for a reasonable belief he did."). The constitutionality of an officer's actions is not limited by the justifications the officer provides at the time of the stop. See *Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004).

### III. Analysis

Griffin argues that police did not have an objective basis to believe that he committed a traffic violation and therefore lacked reasonable suspicion and violated his Fourth Amendment rights. [94, at 2–3.] Specifically, Griffin argues that the Court cannot credit officers' testimony that they pulled over Naylor's vehicle due to its unilluminated rear license plate. [94, at 3–25.] Having had the opportunity to observe firsthand the officers' demeanor under direct- and cross-examination, the Court disagrees. Paired with the body-worn camera footage and official reports of the arrest, the officers' testimony that Naylor's unilluminated rear license plate triggered their traffic stop was credible and, accordingly, officers had reasonable suspicion to stop the car. See also *Whren v. United States*, 517 U.S]. 806, 813 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (internal quotations omitted).

As an initial matter, the Court notes that driving on a roadway without a light illuminating the vehicle's rear license plate violates Chicago Municipal Code § 9-76-050(d). See Chicago, Il., Code § 9-76-050(d) (requiring that "[t]he registration plate at the back of * * * every motor vehicle shall be so lighted that the numbers on said plate shall be plainly legible and intelligible at a

distance of 50 feet"). The Seventh Circuit has held that an officer's suspicion that a defendant committed a traffic offense in violation of the Chicago Municipal Code is sufficient to support reasonable suspicion to support an investigatory stop. See *United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015) ("Because [defendant] does not dispute that he violated the Chicago Municipal Code by parking in the cross walk, the officers clearly had an objective basis to believe that he was violating the law."). Accordingly, an officer reasonably believing that a suspect violated Chicago Municipal Code § 9-76-050(d) can constitute reasonable suspicion sufficient for an investigatory stop.

In the present case, the officers reasonably believed that they saw such a traffic violation. See *Cole*, 21 F.4th at 428. Officers Moylan, Vasquez, and Sweis credibly testified that they observed a car with an unilluminated rear license plate pull to the side of the road without signaling. [Tr. 17, 36, 52–53, 55.] Each officer was consistent in their testimony, even if they did not state this as a reason for the stop in the moment. [*Id.*]; see also *Devenpeck*, 543 U.S. at 153–54. Officer Moylan's body-worn camera footage confirms that Naylor's back license plate was not illuminated. [Exh. 4, at 1–2; Exh. 5, at 4.] The officers' testimony is further supported by the traffic tickets issued to Naylor and the incident report, which both note that Naylor's rear license plate was not illuminated. [Exh. 4, at 1–2; Exh. 5, at 4.] Taking these facts as a whole, the Court concludes that the officers "reasonably believed that [they] saw a traffic violation" and therefore, had reasonable suspicion sufficient to pull Naylor and Griffin over for an investigatory traffic stop. See *Cole*, 21 F.4th at 428.

Griffin argues that because Officers Moylan and Sweis did not inform Naylor that they pulled him over because his back license plate was not illuminated and Officer Vasquez failed to list this as a reason for the stop in his official report, the officers' testimony is not credible. [94,

6

at 4–10.] And setting aside that testimony, Griffin argues, the officers lacked reasonable suspicion to initiate a stop and violated the Fourth Amendment. [*Id.*] The Court is not persuaded. The Fourth Amendment does not require "perfection," just reasonable suspicion. *United States v. Adair*, 925 F.3d 931, 936 (7th Cir. 2019). The Court's present inquiry is, considering the totality of the circumstances, whether an officer reasonably thinks he sees a driver commit a traffic violation, not whether the driver "actually violated the statute." *Cole*, 21 F.4th at 428. While officers' failure to inform Naylor that he was pulled over for failure to have a rear license plate illuminated weighs on the officers' credibility, that fact does not tell the whole story. See, *e.g.*, *United States v. Jackson*, 962 F.3d 353, 357–58 (7th Cir. 2020) (affirming district court's credibility determination of an officer who mistakenly stated that she initiated a traffic stop due to "anything" hanging in the rearview mirror, when her testimony was credible, and she wrote the correct citation information in her report). As mentioned above, officers credibly testified that they all observed the unilluminated rear license plate, which is supported by the accompanying traffic tickets, the incident report, the still image from the body cam footage, and the parties' apparent agreement that the license plate was, in fact, not illuminated. [Tr. 17, 36, 52–53, 55; Exh. 4, at 1–2; Exh. 5, at 4.] The Court finds this evidence, as a whole, sufficient to reject Griffin's attack on the officers' credibility.

Griffin additionally contends that officers failed to act as though they knew that he had a firearm when they reported that they did, which further undermines their credibility. [94, at 10–23.] Again, the Court is not persuaded. Considering the totality of the circumstances, including officers' testimony, body-worn camera footage, and official reports, the Court finds the officers' testimony credible. *Cole*, 21 F.4th at 427. In both the arrest and incident reports, officers reported that they observed early on in their interaction with Griffin that he had an "unknown bulge" in his

7

waistband that was a "possible handgun." [Exh. 1, at 2; Exh. 5, at 4.] At this early stage in the initial traffic stop, Officer Vasquez testified that he was not sure what the bulge was, just that Griffin was repeatedly "fidgeting" with it. [Tr. 46, 49.] Griffin also kept putting his tinted window back up and clearly did not want to exit the car—both actions consistent with trying to shield contraband (the gun) from officers who otherwise easily would have seen it.

Griffin argues that the officers' testimony cannot be trusted, and officers did not see the handgun until later in their interaction with him. [94, at 11–23.] The Court need not credit Griffin's interpretation. Although officers may have suspected that Griffin had a possible handgun, because they had not yet observed it early in their interaction with him, the Court concludes that they reasonably took care to act calmly, rather than escalate the situation. See *United States v. Colbert*, 54 F.4th 521, 530 (7th Cir. 2022) (rejecting defendant's argument that officers did not act as though they perceived defendant to be armed by looking at the totality of the circumstances, including the odor of marijuana emanating from the car, the suspect's evasive and nervous behavior, and the bulge in the suspect's pants). This conclusion is further confirmed by Officer Vasquez's subsequent actions. When Officer Vasquez perceived the bulge in Griffin's pants, Officer Vasquez called for backup [Tr. 39, 54; Exh. 3, 00:15–01:04] and planned to physically remove Griffin from the car to conduct a protective frisk, given his reluctance to leave the vehicle [Tr. 40]. Both these actions are in line with an officer believing that a suspect is armed and dangerous. See *Colbert*, 54 F.4th at 530. When Officer Vasquez reached in to unbuckle Griffin from his seat to remove him from the car, Officer Vasquez repeatedly stated, "Keep your hands where I can see them, don't reach for nothing, I don't want to fight you." [Tr. 39; Exh. 3, 04:10–04:30.] While Officer Vasquez might have been suspicious that Griffin had a handgun in his waistband, thus cautioning Griffin to not "reach" for his waistband and warning him that

Officer Vasquez did not want to "fight," Officer Vasquez's statements indicates that he did not want to escalate the interaction unnecessarily to protect officer safety. [*Id.*] Indeed, it was not until Griffin was physically removed from the car that officers could see the item in his waistband. Once they did, each responded accordingly, with Officer Dalrymple shouting "it's a gun" repeatedly. [Exh. 7, 01:55–02:02.] Thus, considering the evidence as a whole, the Court does not find Griffin's argument compelling and accordingly rejects it.

Griffin finally argues that the officers' testimony that they smelled marijuana emanating from Naylor's vehicle is similarly not credible, rendering the officers' testimony regarding their reasons for initiating the traffic stop suspect.[6] [94, at 23–25.] Griffin's argument boils down to if the officers smelled marijuana, they would have reasonably informed Naylor or Griffin about it. [*Id.*] While the officers' omission of this information is notable, it is not conclusive. Officers Moylan and Sweis testified that they smelled marijuana emanating from the vehicle. [Tr. 21, 58.] The arrest report and incident report reflect the same. [Exh. 1, at 2; Exh. 5, at 3.] The officers testified that they did not inform Naylor and Griffin because both "had already shown apprehension to complying with police orders and stepping out of the vehicle." [Tr. 21.] The Court finds this reasoning persuasive, given Naylor and Griffin's repeated refusals to exit the vehicle. In any event, because the Court finds that the officers reasonably believed that they saw a traffic violation—the vehicle's unilluminated rear license plate—and therefore had reasonable

---

[6] The Court notes that the traffic stop in question took place prior to Illinois legalizing the recreation use of marijuana. *See* Cannabis Regulation and Tax Act, H.B. 1438, 101st Gen. Assemb. (Ill. 2019). Further, the Seventh Circuit has stated that the smell of marijuana by officers can be considered by the Court as a factor supporting reasonable suspicion. *See Colbert*, 54 F.4th at 527–28; *but see People v. Stribling*, 2022 Ill. App. 3d 210098, ¶ 29 (Ill. App. Ct. 2022) ("We hold that the smell of the burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search the vehicle, and the court did not err in granting the motion to suppress.").

suspicion for the initial traffic stop, the Court need not discuss Griffin's additional arguments regarding whether the officers' other reasons were legally sufficient. [94, at 26–32.]

### IV. Conclusion

For the reasons stated above, Defendant David Griffin's motion to suppress [37] is denied.

Dated: February 28, 2023

Robert M. Dow, Jr.
United States District Judge